## COCHRAN *v.* THE STATE.

1. A judge of the superior court is not disqualified from presiding at the trial of an indictment merely because previously thereto he held a court of inquiry and bound the prisoner over.

2. Under all the facts appearing, there was no abuse of discretion in refusing to grant a continuance.

3. That the judge, while a panel of forty-eight jurors was being made up, excused jurors who were not disqualified, affords no cause for a new trial, when it appears that the panel, after being completed, was put upon the accused,

and there was no challenge to the array, or other objection to the panel, and, further, that the peremptory challenges allowed to the accused were not exhausted.

4. Though one accused of crime be jointly indicted with others for the offense of murder, a charge to the effect that if he, " alone or with others," unlawfully shot and killed the deceased with malice aforethought, he would be guilty of the crime, is not cause for a new trial.

5. When testimony is distinctly offered for an explicit purpose, and there is no contention that it should be considered for any other purpose, a new trial will not be granted because the court in its charge restricted the jury to the consideration of such testimony with reference to this purpose alone, although it may have been relevant for other purposes.

6. When a request to charge that confessions should be received with caution is given in the exact language of the request presented, it is not cause for a new. trial that the court omitted to use the word " great," between the words " with " and " caution."

7. The fact that the judge in charging the jury referred to them as " honest, experienced, intelligent, upright citizens selected to try the case," is not cause for a new trial.

8. One on trial for crime is not entitled as matter of right to make a second statement to the jury.

9. Allowing leading questions to be asked is a matter purely within the discretion of the trial judge. There was no error in the charges complained of, not specifically noted above; there was no material error in admitting evidence; the evidence fully warranted the verdict, and there was no error in denying a new trial.

Argued May 20, — Decided July 18, 1901.

Indictment for murder.   Before Judge Candler.   Campbell superior court.   March 14, 1901.

*Arnold & Arnold, J. F. Golightly, C. C. Smith, J. B. Suttles,* and *P. D. Waits,* for plaintiff in error.   *J. M. Terrell, attorney-general, W. T. Kimsey, solicitor-general, L. S. Roan,* and *C. S. Reid,* contra.

LEWIS, J.   Eight men, one of whom was the plaintiff in error, were indicted for the murder of Sterling Thompson.   The defendants severed, and J. A. Cochran was tried and convicted.   He excepts to the overruling of his motion for a new trial, the material grounds of which will be considered as the opinion proceeds.

1. It is contended that the judge who tried the case should have held himself disqualified, although there was no suggestion of disqualification, nor any objection to his presiding.   It appears that, after the defendant and several of the others named in the indictment were placed in Fulton county jail, Judge Candler, upon application to him for a committing trial, went to Fairburn and held the committal trial, his reason being that he did not wish the ju-

47

rors who would likely be drawn or summoned to hear the evidence on the committal trial. Before that time the defendants had applied to the judge to have the prisoners returned to Fairburn for a committal trial. They made no objections to his hearing the evidence, but stated that they wished an investigation as to whether they should be bound over. The judge went to Fairburn, heard the evidence, and, the defendants offering no evidence, committed the defendant and others under arrest to jail under the warrant sworn out, charging them with murder.

Leaving out of consideration the fact that at the time of the trial this point was not made, there is no merit in the contention that conducting the preliminary committal trial disqualifies, or ought to disqualify, the judge from presiding at the regular trial of the accused. The only argument advanced to sustain it by counsel for the plaintiff in error is that the news that the superior-court judge had presided at the preliminary trial and bound the accused over might lead the public, including prospective jurors, to the conclusion that the judge had made up his mind that the accused was guilty. If we concede, as we must, that the citizens of the county where the case was tried were possessed of a sufficient amount of intelligence to understand the nature of a commitment trial, this argument at once falls to the ground. The accused offered no evidence at the preliminary hearing, and the act of the judge in binding him over was simply equivalent to a judicial determination that the case against the prisoner warranted further investigation by the grand jury. While there is no Georgia case exactly in point as to facts, the principle here involved is fully settled by the ruling of this court in the case of *Heflin* v. *State*, 88 *Ga.* 151. The first headnote of that case is as follows: " It does not per se disqualify a judge of the superior court to preside on the trial of an indictment for perjury, that the same judge presided at the trial of the case in which the alleged perjury was committed, and also of a second case in which one of the witnesses in the first was convicted of perjury. Nor does any disqualification result as matter of law from the judge having, by reason of his acquaintance or supposed acquaintance with the facts thus derived, privately and unofficially advised the prisoner's counsel to induce his client to plead guilty, saying that there was no doubt about his guilt and no earthly chance for him to be acquitted." Certainly a stronger case is there presented than is now be-

fore us.  We quote the following from the learned opinion of Chief
Justice Bleckley on pages 154 and 155:  " It can make no differ-
ence that the judge had thus become convinced of Heflin's guilt,
because the opinion of the presiding judge as to the guilt or innocence
of the prisoner, however that opinion may have been formed, does
not unfit him for discharging his judicial duties with the most com-
plete fairness and impartiality.   These duties are exactly the same
whether the accused is guilty or innocent, and upon that question
the judge has no deciding power and is not permitted to intimate
to the jury his opinion.   . .   It could hardly be expected that
from hearing all the evidence he would not form some opinion of his
own as to the actual guilt or innocence of the person on trial, but
the law cares not for this, and is not so absurd as to make it work
a disqualification to preside throughout the trial."

2.  The accused moved for a continuance, on the ground of the
absence of certain named witnesses by whom he expected to estab-
lish proof material to his defense.   To the ground of the motion
for a new trial complaining of the refusal to grant a continuance
the trial judge appended an explanatory note.   In the light of this
note, and taking the showing for a continuance in its entirety, the
record discloses ample reason for concluding that the judge was
warranted in holding that, under all the facts and circumstances
appearing, the motion to continue was not really made in good
faith.   We will not, therefore, disturb the judgment on this ground.

3.  The fifth, sixth, and seventh grounds of the motion assign
error upon the excusing of three jurors of the array put upon the
defendant, upon the contention of the State's counsel that they
were disqualified by relationship.   It appears that the three jurors
in question were related in various degrees of affinity to others of
the men who had been jointly indicted with the defendant on trial,
but no relationship was shown to exist between any of them and
the defendant himself.   The panel was filled up from regularly
drawn jurors from the jury-box of the county, and the jury se-
lected without either side having exhausted the peremptory chal-
lenges allowed them.   No challenge to the array was made after
these jurors were taken off, nor was any objection made to the ju-
rors who were afterwards put on to fill their places.   Conceding,
for the sake of the argument, that the three jurors were not dis-
qualified and that the court erroneously struck them from the

panel, the defendant, by not thereafter challenging the array, waived any objection to such error. See *Moon v. State,* 68 *Ga.* 687; *Fogarty v. State,* 80 *Ga.* 450 (8). There is nothing in conflict with these views in the decision in the case of *Cunneen v. State,* 96 *Ga.* 406, for in that case the judge arbitrarily excused a juror from the panel, and upon that ground the accused challenged the array.

4. There is no merit in the ground of the motion which complains of the charge of the court to the effect that if the evidence, taken all together, should satisfy the jury beyond a reasonable doubt that the accused, "alone or with others," attacked the deceased, and in such attack unlawfully shot and killed him, with malice aforethought, they should convict him of murder. See *Plain v. State,* 60 *Ga.* 284; *Nobles v. State,* 98 *Ga.* 73.

5. Error is assigned upon the following portion of the judge's charge : "Evidence has been offered as to the whereabouts of other persons who are jointly indicted with this defendant, at the time when this offense was alleged to have been committed. This evidence has been offered but for one purpose, namely, for the purpose of throwing light upon the credibility of witnesses in this case. To make this plain to you, certain witnesses have been offered as to certain parties other than the defendant being present at the scene of the killing; witnesses have been offered to prove that these parties were not present. This last evidence is only relevant for the purpose of contradicting or impeaching such witnesses. You are not to pass upon the guilt or innocence of these parties. In considering this evidence, you only consider it in determining the credit to be given to the testimony of such witnesses, because a witness may be impeached by proof of contradictory statements and also by disproving the facts testified to by him." We see no error in this charge. The evidence in question was offered for the distinct purpose of impeaching certain witnesses, and the court had not been called upon to pass on its admissibility for any other purpose. That being the case, it was not error to restrict its consideration by the jury to the purpose for which it was admitted, even if it were admissible for other purposes.

6. The charge of the court upon the subject of confessions was given in the exact language of the written request of counsel for the accused, and he will not be heard now to complain because the phraseology he selected was used. It is customary to charge that

·confessions are to be received with "great" caution; but even if the omission of the word "great" be reversible error, the court in ·the present case was led into the mistake through the act of the ·defendant's counsel, and it would be absurd to set aside the judgment for any such reason.

7. Complaint is made that the judge in charging the jury referred to them as "honest, experienced, intelligent, upright citizens selected to try the case." It is not shown how this language affected the verdict one way or the other. We are not prepared to hold that it is reversible error for the court to compliment the jury. ·Such a matter must, in the nature of things, be left to the good taste ·of the presiding judge. How the language used could have prejudiced the rights of the accused we can not see, nor can we un-·derstand why he should object to having his case submitted to men of the character mentioned.

8. It was not error for the court to refuse to allow the defendant to make more than one statement. That no such right is given him by the law, and that the granting of such a privilege is entirely ·discretionary with the trial court, has been repeatedly ruled by this court, and it is only necessary to cite, in passing, a few of the au-·thorities which sustain this position. See *Vaughn* v. *State*, 88 *Ga.* 732; *Boston* v. *State*, 94 *Ga.* 590; *Sharp* v. *State*, 111 *Ga.* 176; *Knox* v. *State*, 112 *Ga.* 373.

9. Error is assigned because the court allowed the solicitor-general to propound to a named witness certain questions alleged to have been leading. As to this, see the opinion of Chief Justice Bleckley in *Howard* v. *Johnson*, 91 *Ga.* 319, where the subject is dealt with as follows: "Granting that the question propounded . . was leading, the allowance of it was not cause for a new trial. Such details in practice are generally subject to the discretion of the trial court." See also *Allgood* v. *State*, 87 *Ga.* 668.

Numerous other points are made in the motion for a new trial, but we have here dealt with every question which we deem necessary to a correct determination of the case. There was no material error in the admission or rejection of evidence, and the charge, taken as a whole, was full and fair. The evidence was ample to sustain the verdict, and we see no error in overruling the motion for a new ·trial.          *Judgment affirmed. All the Justices concurring.*